**Sher Ali SYED SHAH, Plaintiff,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant.**

**No. A1–04–072.**

United States District Court,
D. North Dakota,
Southwestern Division.

July 21, 2005.

Rodney E. Pagel, Pagel Weikum, PLLP, Bismarck, ND, for Plaintiff.

Thomas L. Zimney, Zimney Foster Johnson Dittus & Flaten, Grand Forks, ND, for Defendant.

## ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

HOVLAND, Chief Judge.

Before the Court are cross motions for summary judgment. The action arises out of the defendant's denial of a claim for underinsured motorist benefits. The parties seek a decision from the Court declaring whether the Plaintiff is entitled to underinsured motorist coverage under the insurance contract. The principal issue concerns the choice of law applicable to this insurance contract dispute involving an automobile accident that occurred in Canada. The case turns on the proper interpretation and application of the underinsured motorist benefits provision of the insurance policy issued by State Farm. For the reasons set forth below, the Court grants the Plaintiff's Motion for Summary Judgment and denies the Defendant's Motion for Summary Judgment.

## I. *BACKGROUND*

This action was commenced in state court on May 13, 2004, with the mailing of a summons and complaint to the Commissioner of Insurance for the State of North Dakota. An admission of service was executed by the Insurance Commissioner on May 17, 2004. The defendant, State Farm Mutual Automobile Insurance Company (State Farm), mailed its answer to the state court on June 1, 2004. On June 3, 2004, State Farm removed the action to federal court. Jurisdiction is based upon diversity of citizenship with State Farm being an Illinois corporation and Shah a resident of North Dakota. The complaint is for breach of contract and requests a declaratory judgment finding Shah is entitled to underinsured motorist benefits. Shah specifically requests compensation for non-economic damages which are non-recoverable under Manitoba law. The facts of this case are largely undisputed.

On May 23, 1998, the plaintiff, Sher Ali Syed Shah (Shah), was a passenger and invited occupant in an automobile owned and operated by Kingsley Austin (Austin). The vehicle was involved in an accident in Winnipeg, Manitoba. Austin was an "Insured" under a policy providing automobile insurance coverage (including underinsured motorist coverage) issued by State Farm to Austin. Shah was also an "Insured" under such policy because he was a lawful occupant of the Austin vehicle. The owner and operator of the other vehicle involved in the accident was Clifford Murray (Murray). At the time of the accident, Murray was a Canadian citizen and resident of Manitoba, Canada. It is alleged that Murray rear-ended the Austin vehicle. Shah was a citizen of Pakistan lawfully residing in Pembina, North Dakota. At the time the State Farm insurance policy was issued to Austin, he operated a business in Pembina, North Dakota, and was a resident of North Dakota.

Murray's automobile was insured by Manitoba Public Insurance Corporation of Manitoba (MPIC), policy number A02297223. The policy provided coverage for legal liability arising from the ownership and operation of Murray's vehicle. The coverage provided for (1) income replacement equal to 90–percent of net income computed on a yearly basis subject to an annual maximum of $55,000; (2) payment of up to $100,000 for permanent impairment; and (3) payment of medical and paramedical care, including transportation and lodging without any maximum limit.

The Manitoba Public Insurance Act provides that MPIC is the only entity against whom claims can be filed for injuries and damages resulting from a motor vehicle accident in Manitoba involving a Manitoba insured. The applicable provision, 19(1), provides as follows:

### Actions against corporation only

19(1) No action or other proceeding lies against any person other than the corporation for the purpose of enforcing any claim, or right in relation to the operations engaged in or carried on pursuant to this Act.

The Manitoba Public Insurance Corporation Act (Act) provides that no tort action is available against the driver, and that compensation for a victim of an accident who is not a Manitoba resident is determined on a fault basis. The applicable provisions and language of the Act provide as follows:

### No tort actions

72 Notwithstanding the provisions of any other Act, compensation under this Part stands in lieu of all rights and remedies arising out of bodily injuries to which this Part applies and no action in that respect may be admitted before any court.

**Entitlement of non-resident re accident in Manitoba**

75(1) Notwithstanding section 73, a victim, or a dependant of a victim, of an accident that occurs in Manitoba who is not resident in Manitoba is entitled to compensation under this Part

(a) in accordance with any agreement between the corporation and a government or an agency of the government of the place of residence of the victim; or

(b) if no agreement exists, to the extent that the corporation determines the victim is not responsible for the accident.

Following the accident on May 23, 1998, Shah flew from Winnipeg to Pakistan as planned. While in Pakistan, Shah was treated for injuries he allegedly sustained in the accident. Upon returning to the United States two months after the accident, Shah began medical treatment in Hallock, Minnesota, where the majority of his medical treatment was received.

Shah allegedly sustained injuries as a result of the May 23, 1998, automobile accident. He submitted an "Application for Compensation" to MPIC. MPIC determined that Shah was entitled to income replacement in the amount of $12,628.17 (full-time) and $2,850.19 (part-time). Shah was paid these amounts by MPIC. MPIC also determined that Shah was entitled to receive a permanent impairment award and he was paid the sum of $3,259.92. Shah received other additional benefits from MPIC in the amount of $1,512.41. *See* Defendant State Farm Mutual Automobile Insurance Company's Statement of Undisputed Material Facts.

At the time of the accident, Austin's automobile was insured by State Farm with liability limits for bodily injury in the amount of $100,000 per person and $300,000 per accident. The insurance policy also provided for underinsured and uninsured motorist coverage in the same amount as the liability limits.

On July 13, 1998, Shah filed an application for personal injury protection (PIP) benefits with State Farm. Thereafter, he submitted medical bills and related expenses which State Farm paid in the total amount of $9,570.18.

The State Farm policy issued to Austin contained the following provisions:

**Deciding Fault and Amount—Coverages U and W**

Two questions must be decided by agreement between the insured and us:

1. Is the insured legally entitled to collect damages from the owner or driver of an uninsured motor vehicle or an underinsured motor vehicle; and

2. If so, in what amount?

If there is no agreement, then:

2. If either party does not consent to arbitrate these questions or if the arbitrators selected by each party cannot agree on the third arbitrator, the insured shall:

a. file a lawsuit in the proper court against the owner or driver of the uninsured motor vehicle or underinsured motor vehicle and us, or if such owner or driver is unknown, against us; and

b. upon filing, immediately give us copies of the summons and complaints filed by the insured in that action; and

c. secure a judgment in that action. The judgment must be the final result of an actual trial and an appeal, if an appeal is taken.

3. If the insured files suit against the owner or driver of the uninsured motor vehicle or underinsured motor vehicle, we have the right to defend on the issues of the legal liability of and

the damages owed by such owner or driver.

There has been no agreement between Shah and State Farm that entitles Shah to collect damages from the owner/driver (Murray) of the underinsured motor vehicle. No lawsuit has been filed against Murray because such suits are prohibited under Canadian law, and no judgment has been entered in favor of Shah against Murray or MPIC.

The State Farm policy issued to Austin also contained the following provision:

3. The most the company will pay is the lesser of:

a. the amount of compensatory damages established but not recovered by an agreement, settlement, or judgment with or for the person or organization legally liable for the bodily injury; or

b. the limits of liability of these coverages.

The State Farm policy issued to Austin provided underinsured motorist coverage (UIM). The relevant language of the coverage provision states as follows:

We will pay compensatory damages for bodily injury an insured is legally entitled to collect from the owner or driver of an underinsured motor vehicle. The bodily injury must be caused by accident arising out of the operation, maintenance or use of an underinsured motor vehicle.

The State Farm insurance policy was drafted to conform to North Dakota law. The policy expressly provides that all coverages which the insured pays for will apply in any state *and* in Canada. In that regard, the policy language provides:

*Where Coverage Applies*

The coverage you chose apply

1. in the United States of America, its territories and possessions or Canada; or

2. while the insured vehicle is being shipped between their ports.

The liability, no-fault and physical damage coverages also apply in Mexico within 50 miles of the United States border. A physical damage coverage loss in Mexico is determined on the basis of cost at the nearest United States point. Death, dismemberment and loss of sight coverage applies anywhere in the world.

State Farm has denied Shah's claim for UIM benefits on the grounds that because Shah is not "legally entitled to collect" damages from Murray (the Canadian driver who caused the accident), he is not entitled to underinsured motorist benefits.

## II. *LEGAL DISCUSSION*

It is well-established that summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Clark v. Kellogg Co.*, 205 F.3d 1079, 1082 (8th Cir.2000). A fact is "material" if it might effect the outcome of the case and a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The basic inquiry for purposes of summary judgment is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376 (8th Cir.1996). The moving party has the initial burden of demonstrating to the Court that there are no genuine issues of material fact. If the moving party has met this burden, the non-moving party cannot simply rest on

the mere denials or allegations in the pleadings. Instead, the non-moving party must set forth specific facts showing that there are genuine issues for trial. Fed. R.Civ.P. 56(e); *Krein v. DBA Corp.*, 327 F.3d 723, 726 (8th Cir.2003). A mere trace of evidence supporting the non-movant's position is insufficient. A non-movant must present more than a scintilla of evidence and must present specific facts to create a genuine issue of material fact for trial. *F.D.I.C. v. Bell*, 106 F.3d 258, 263 (8th Cir.1997). The facts must generate evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## A. STANDARDS FOR INTERPRETATION OF INSURANCE CONTRACTS

This case turns on the proper interpretation and application of the underinsured motorist benefits provision of the State Farm policy. It is well-established that the interpretation of an insurance contract is a question of law. *McPhee v. Tufty*, 623 N.W.2d 390, 395 (N.D.2001). Whether an insurance policy is ambiguous is also a question of law. *Id.* The goal in interpreting insurance policies, as when construing any contract, is to give effect to the mutual intentions of the parties as they existed at the time the contract was entered into. *Nationwide Mut. Ins. Co. v. Lagodinski*, 683 N.W.2d 903, 907 (N.D.2004). The Court must first look to the language of the insurance contract itself. Clear and unambiguous policy language is not be given any alternate construction. Ambiguous language is to be construed against the party who drafted the contract. *Northwest G.F. Mut. Ins. Co. v. Norgard*, 518 N.W.2d 179, 181 (N.D. 1994). If coverage hinges on an undefined term, the plain, ordinary meaning of the term must be applied in interpreting the contract. *Lagodinski*, 683 N.W.2d 903, 907. Insurance policies are to be regarded as contracts of adhesion and any ambiguities must be resolved in favor of the insured. However, insurance contracts will not be rewritten to impose liability on an insurer if the policy unambiguously precludes coverage. Insurance contracts must be construed as a whole to give meaning and effect to each clause. The entire contract is to be taken as a whole to give effect to every part. *Id.*

It is clear and undisputed that North Dakota law governs the interpretation of the insurance policy, and the interpretation of an insurance policy presents a question of law for the Court to resolve. The insurance policy was issued in North Dakota by State Farm to Kingsley Austin, the owner and operator of the vehicle involved in the accident in Canada. Austin is a North Dakota resident and State Farm conducts business in North Dakota. The vehicle in question is registered in North Dakota and the policy covers vehicles registered in North Dakota. North Dakota is the state with which the policy has its most significant relationship. There is no question that North Dakota law governs the interpretation of the insurance contract.

## B. THE STATE FARM POLICY

### 1. THE "LEGALLY ENTITLED TO COLLECT" LANGUAGE OF THE POLICY

Under the underinsured motorist benefits provision of the State Farm policy, State Farm argues that it is only obligated to pay if Shah is "legally entitled to collect" damages from the owner or operator of the underinsured vehicle. In other words, under the general rules of interpretation, the applicability of UIM coverage is dependent on whether Shah is legally entitled to recover from Murray, the motorist

who struck Austin's vehicle in which Shah was a passenger. State Farm contends that (1) the insurance policy expressly incorporates by reference the substantive tort law applicable to determining what damages an insured is "legally entitled to collect" from an underinsured motorist; (2) the damages an insured is "legally entitled to collect" are governed by the laws of Manitoba, the jurisdiction where the accident took place and the residence of the underinsured motorist; (3) under Manitoba law, the damages for bodily injury an insured is entitled to collect do not include non-economic damages such as pain and suffering; and (4) because Shah had no legal entitlement under Manitoba law to compensation for non-economic damages from the underinsured motorist, he cannot recover non-economic damages from State Farm under the underinsured motorist coverage of the policy.

Shah contends that (1) State Farm does not stand in the shoes of an underinsured motorist and does not have all of the defenses available to that motorist; (2) an insured need only prove negligence on the part of the underinsured motorist and that damages resulted from the accident that the motorist's insurance does not cover; (3) the damages Shah is "legally entitled to collect" under North Dakota law include non-economic damages; (4) applying Manitoba law to determine Shah's damages contravenes North Dakota public policy; and (5) Shah is entitled to recover compensation for non-economic damages from State Farm under the underinsured motorist coverage.

The critical issue to be resolved is whether Shah is "legally entitled to collect" non-economic damages from State Farm under the underinsured motorist coverage provisions of the policy. The related issue is which law, Manitoba law or North Dakota law, governs whether Shah is "legally entitled to collect" from the underinsured motorist. Although North Dakota law governs the interpretation of the insurance contract, North Dakota law will not necessarily govern the disposition of all issues in the case. The disposition of whether Shah is "legally entitled to collect" turns on the jurisdiction which has the strongest interest in the resolution of the particular issue presented.

This dispute centers on which jurisdiction's tort law applies to the contractual dispute involving the recovery of underinsured benefits. When an insured sues an insurance company for underinsured motorist coverage, contract law and tort law converge. A UIM claim is essentially an action against the contract. It is clear that contract law applies to interpret the policy. However, an insured's right to UIM benefits hinges on the existence of a tort cause of action against the underinsured driver. Unfortunately, the State Farm policy does not speak to what law is to be applied in determining whether the insured is "legally entitled to collect." [1] The North Dakota Supreme Court has not directly addressed the precise issue presented in this dispute.

Shah cites to a decision from the Supreme Court of Wisconsin which is directly

---

1. State Farm has known that the language in its automobile insurance policies concerning UM/UIM coverage was troublesome, particularly when the accident occurred in a jurisdiction outside the United States. *See State Farm Mut. Ins. Co. v. Gillette,* 251 Wis.2d 561, 641 N.W.2d 662 (2002); *State Farm Mut. Ins. Co. v. Krewson,* 764 F.Supp. 1012 (1991). However, State Farm did not include language in the policy expressly stating that the law of the forum where the accident occurred would govern the amount and type of damages recoverable, yet it did include language stating that *all coverages apply in Canada.* The problems created in this contractual dispute could be easily remedied with careful drafting of the insurance contract.

on point. *See State Farm Mut. Auto. Ins. Co. v. Gillette*, 251 Wis.2d 561, 641 N.W.2d 662 (2002). The facts in *Gillette* are remarkably similar. In *Gillette*, the plaintiff was a passenger in a vehicle driven in Manitoba by a Wisconsin resident. When the vehicle had stopped, it was struck by a motor vehicle driven by a Manitoba resident who was insured by the Manitoba Public Insurance Corporation (MPIC). As in the present dispute, Manitoba law did not allow for the recovery of non-economic damages. The plaintiff submitted a claim to State Farm for UIM coverage. State Farm denied the claim and cited to the same policy language at issue in this dispute for the proposition that the plaintiff was not "legally entitled to collect" under Manitoba law and, as a result, UIM coverage was not available. The *Gillette* case posed the following complex question:

> Is an insured who is a Wisconsin resident and who has underinsured motorist coverage in a policy issued in Wisconsin (which policy promises to pay "damages for bodily injury an insured is 'legally entitled to collect' from the owner or driver of an underinsured motor vehicle") entitled to recover noneconomic damages for pain and suffering from that Wisconsin insurance company for bodily injury arising from an automobile accident that occurred in Manitoba, Canada, between the insured and a Manitoba driver, when Manitoba law precludes the recovery of non-economic damages?

641 N.W.2d 662, 665.

The Supreme Court of Wisconsin determined that Wisconsin law would govern the interpretation of the insurance contract because Wisconsin had a more significant relationship to the contract than Manitoba. The State Farm policy had been issued in Wisconsin, the driver was a resident of Wisconsin, and the policy covered vehicles registered in Wisconsin. The court in *Gillette* then determined that the language "legally entitled to collect"

means that an insurance company must compensate the insured for injuries actually incurred up to the amount of damages a driver of an underinsured vehicle is liable for under the **applicable law** and up to the policy limits. 641 N.W.2d 662, 675. The Court emphasized that such an interpretation promoted the purpose of UIM coverage which is to compensate the victim for injuries when the tortfeasor's liability limits are not adequate. The Wisconsin Supreme Court considered the determinative issue to be as follows: "whether under Wisconsin law the insured is entitled to recover non-economic damages for pain and suffering for bodily injury arising from an automobile accident that occurred in Manitoba, Canada, between the insured and a Manitoba driver, when Manitoba law precludes the recovery of non-economic damages." 641 N.W.2d 662, 675. In other words, was Wisconsin tort law or Manitoba tort law to apply to the insurance contract. The Supreme Court concluded that Wisconsin tort law should apply after engaging in a choice of law analysis. In *Gillette*, the Wisconsin Supreme Court concluded that the only reasonable interpretation of the language "legally entitled to collect" is that an insurance company should compensate an insured for injuries incurred up to the amount of damages for which the driver of an underinsured vehicle is liable under the applicable law, which was Wisconsin law rather than Manitoba law.

State Farm contends that the North Dakota Supreme Court would not follow the *Gillette* case and cites to a number of cases defining the phrase "legally entitled to collect". *See Stuhlmiller v. Nodak Mut. Ins. Co.*, 475 N.W.2d 136 (1991)(holding that the insured is not entitled to underinsured motorist coverage where his injuries were caused by a co-employee who was statutorily immune because worker's compensation benefits are the injured employee's exclusive remedy under North Dakota

law); *Cormier v. Nat. Farmers Union Prop. and Cas. Co.*, 445 N.W.2d 644 (N.D. 1989)(same result for uninsured motorist coverage). Both *Cormier* and *Stuhlmiller* involved the application of North Dakota law because the accidents occurred in North Dakota and involved North Dakota residents. Both cases contain a lengthy discussion concerning statutory immunity and workers compensation laws. Both cases stand for the proposition that the plaintiff, an injured employee, was not "legally entitled to recover" any damages from the statutorily-immune driver who was a co-worker. The injured plaintiff was not entitled to recover uninsured motorist benefits in either case. However, neither case provides assistance in addressing the choice of law to be applied, and neither case involved a factual scenario where damages, albeit limited, were in fact recoverable against the underinsured driver.

State Farm relies upon *State Farm Mut. Auto. Ins. Co. v. Krewson*, 764 F.Supp. 1012 (E.D.Pa.1991), to support the contention that Manitoba tort law should govern coverage under the insurance contract because the accident occurred in Manitoba. In *Krewson*, the insured was killed by a drunk driver in the Cayman Islands, British West Indies. The decedent's estate filed a UIM claim for the recovery of future loss of earning with State Farm in Pennsylvania where the insured had lived and where the policy was issued. Such damages were not recoverable under the law of the Cayman Islands. State Farm rejected the claim and asserted that the estate was not "legally entitled to recover" such damages because the law of the Cayman Islands prohibited recovery for the loss of future earnings. The federal district court agreed and refused to engage in a choice of law analysis. The court reasoned that the insurance contract limited damages to the amount legally recoverable from the tortfeasor and damages

were non-recoverable for loss of future earnings under the law of the Cayman Islands.

This Court believes that the North Dakota Supreme Court would find the holding in *Gillette* more reasonable and persuasive. Such a holding furthers the purpose of the underinsured motorist statute, namely, the protection of insureds from injuries caused by underinsured motor vehicles. It also affirms the reasonable expectation of insureds who purchase UIM coverage when the insurance contract expressly states that coverage applies throughout the United States and Canada.

There are cases from around the country that have reached differing results when confronted with this issue. There are cases that support the conclusion reached in this case. *See Traveler's Indem. Co. v. Lake*, 594 A.2d 38 (Del.1991); *O'Connor v. O'Connor*, 201 Conn. 632, 519 A.2d 13 (1986); *Thomas v. Hanmer*, 109 A.D.2d 80, 489 N.Y.S.2d 802 (1985); *Miller v. White*, 167 Vt. 45, 702 A.2d 392 (1997). There are also cases from other jurisdictions which have applied the tort law of the place of the accident to determine the amount and the type of recoverable damages. *See State Farm Mut. Auto. Ins. Co. v. Krewson*, 764 F.Supp. 1012 (E.D.Pa. 1991); *Williams v. State Farm Mut. Auto. Ins. Co.*, 229 Conn. 359, 641 A.2d 783 (1994). Nevertheless, the reasoning of the Wisconsin Supreme Court in *Gillette* is more persuasive and fulfills the purpose of underinsured motorist coverage.

## 2. *CHOICE OF LAW*

The next issue is which law, Manitoba law or North Dakota law, governs whether Shah is "legally entitled to collect" from the underinsured motorist. There is no dispute that Manitoba law does not allow for the recovery of non-economic damages

whereas North Dakota law allows for such recovery. As in *Gillette,* the choice of law becomes the dispositive issue. Shah contends that North Dakota law should apply and State Farm assumes that Manitoba law automatically applies. The insurance contract neither contains a choice of law provision nor any qualifying language to the effect that coverages are subject to Canadian law. Of critical importance is the fact that the language of State Farm's insurance contract expressly provides that all coverages apply in Canada.

 North Dakota has abandoned the idea that the law-of-the-place where the wrong occurred governs in determining choice of law questions. *Nodak Mut. Ins. Co. v. Wamsley,* 687 N.W.2d 226, 231 (N.D. 2004). Instead, North Dakota applies a significant contacts test. The test has two prongs, the first prong being a consideration of all the relevant contacts and the second prong being a consideration of five "choice-influencing" factors. The "choice influencing" factors are (1) predictability of results, (2) maintenance of interstate and international order, (3) simplification of the judicial task, (4) advancement of the forum's governmental interests, and (5) application of the better rule of law. Applying these factors to this case, and mindful that the accident occurred in Manitoba, Canada, it is clear that North Dakota has more significant contacts and interests in this action than does Manitoba.

### a. RELEVANT CONTACTS

In the present dispute, both Shah and Austin are residents of North Dakota. The insurance contract was entered into in North Dakota and was drafted by State Farm to conform to North Dakota law which requires UIM coverage. Austin's car was registered in North Dakota. Murray is a resident of Manitoba and the accident occurred in Manitoba. Murray's car was registered in Manitoba and his insurance policy was obtained from the MPIC as required under Manitoba law. State Farm is an Illinois resident doing business in North Dakota. The most significant contacts are those bearing upon the contractual relationship. *Wamsley,* 687 N.W.2d 226, 231. Manitoba's contacts relate only to the underlying tort. North Dakota's contacts relate primarily to the insurance contract which rests at the center of this dispute. Manitoba has virtually no interest in whether a North Dakota insurer pays underinsured motorist benefits to a North Dakota resident. The relevant contacts favor the application of North Dakota law.

### b. THE "CHOICE INFLUENCING" FACTORS

#### 1) PREDICTABILITY OF RESULTS

The first factor deals with fulfilling the reasonable expectation of the parties. *Gillette,* 251 Wis.2d 561, 641 N.W.2d 662, 676. It is desirable that the parties to an insurance contract fully understand what coverages will apply at the time the contract is entered into. In cases involving insurance contracts, it is preferable to apply the law of the jurisdiction in which the policy was issued and the premiums paid. *See Nodak Mut. Ins. Co. v. Wamsley,* 687 N.W.2d 226, 232 (N.D.2004).

It is reasonable to assume that the parties to this insurance contract would have expected North Dakota law to apply because the contract was entered into in North Dakota. The policy was drafted by State Farm to conform to North Dakota law, and all of the premiums were paid in North Dakota. Applying the laws of other jurisdictions would not promote predictability or uniformity. The insured would need to know and understand the tort law of all the various states and provinces where the policy applied and where he/she may travel in order to understand the

meaning and scope of the coverage provided for under the contract. This would not serve to protect the parties legitimate expectation of predictable results. The application of North Dakota law is favored because North Dakota law would be applied regardless of which jurisdiction the insured traveled into. Thus, the first factor weighs in favor of applying North Dakota law.

### 2) MAINTENANCE OF INTERSTATE AND INTERNATIONAL ORDER

This factor promotes the idea that the forum jurisdiction should give consideration to the laws of other jurisdictions with the goal of avoiding interjurisdictional friction. *Gillette*, 641 N.W.2d 662, 676. Manitoba has minimal concern regarding the issues presented in this lawsuit and the outcome of this litigation. The outcome will have no effect on any Manitoba resident or Manitoba's public policy. To allow Shah to recover underinsured motorist benefits from State Farm would not offend or impinge upon Manitoba's system of insurance. The outcome will not raise premiums for Manitoba drivers nor will any additional costs be imposed on our Canadian neighbors. On the other hand, restricting Shah's right to recover UIM benefits from State Farm would essentially give the unique Manitoba laws an extraterritorial effect that seriously impinges on North Dakota law and North Dakota insureds. North Dakota's concerns are substantial with significant implications for North Dakota's residents, insureds, public policy, and the law. As the choice of law question will have no effect on international order, this second factor favors the application of North Dakota law.

### 3) SIMPLIFICATION OF THE JUDICIAL TASK

The choice in applying North Dakota or Manitoba law would not simplify the judicial task. The Court can apply the law of either jurisdiction. As a federal court with diversity jurisdiction, this Court regularly applies the laws of other jurisdictions. Indeed, the parties have provided the Court with the relevant Manitoba law as well as the relevant North Dakota law. The third factor does not weigh in favor of an application of either North Dakota or Manitoba law.

### 4) ADVANCEMENT OF THE FORUM'S GOVERNMENTAL INTERESTS

A state's governmental interest in a choice of law case can be determined by considering (1) the contacts the action which gave rise to the litigation had with the state, and (2) whether those contacts give rise to concrete reasons for applying the state's law to the litigation. *See Wamsley*, 687 N.W.2d 226, 234. In the present dispute, North Dakota would have a substantial interest in governing the contractual relationship between a North Dakota insured and an insurance company doing business in North Dakota. It is clear that Manitoba would have no such interest. The location of the accident does not change the relative interests of the two jurisdictions. Applying the quirks of Manitoba law would not further North Dakota's interest of ensuring that its residents who are tort victims are compensated for their injuries. Nor would it further North Dakota's interest in fulfilling the reasonable expectations of the parties. Manitoba law, which bars recovery for non-economic damages and prohibits lawsuits against negligent drivers, is a concept foreign to North Dakota law. It is simply not reasonable to conclude that the insured knew or reasonably should have known that the extent of recovery could be limited by the law of a foreign country which is contrary to North Dakota law, particularly when the State Farm policy expressly provides

that all coverages provided for under the policy (including UIM coverage) apply in Canada. The application of Manitoba tort law to this insurance contract would undermine North Dakota's interest in ensuring that residents who have been injured in an automobile accident in Canada are reasonably compensated and that the reasonable expectations of the parties to the contract are fulfilled. Manitoba's governmental interest in this litigation is significantly less than North Dakota's. As a result, the fourth factor weighs in favor of the application of North Dakota law.

### 5) APPLICATION OF THE BETTER RULE OF LAW

The final factor is whether North Dakota or Manitoba has the better rule of law. It is clear that the laws of the two jurisdictions are certainly divergent. This fifth factor weighs in favor of neither North Dakota or Manitoba law.

### III. CONCLUSION

North Dakota law requires insurers to include, as a part of any automobile insurance package, uninsured and underinsured motorist coverage in amounts equal to the bodily injury liability coverage the insured has purchased. The purpose of this requirement is to protect the insured from the risk that a negligent driver of another vehicle will cause injuries to the insured, and will have inadequate liability coverage to compensate for the injuries caused by his/her negligence.

The Court concludes, as a matter of law, that North Dakota choice of law rules govern the determination of the damages an insured is "legally entitled to collect" from an underinsured motorist. North Dakota has the most significant contacts to this action. It is the jurisdiction where the injured plaintiff resides, and where the insurance policy was issued by a North Dakota insurer to a North Dakota insured. Although Manitoba is the place of injury,

North Dakota has the most significant relationship to the parties and to the issues presented in this lawsuit. Applying North Dakota law comports with North Dakota's public policy of compensating victims of tortfeasors.

This Court concludes, as a matter of law, that North Dakota law governs the issue of whether Shah is "legally entitled to collect" damages from Murray in order to be eligible for underinsured motorist benefits under the insurance policy issued by State Farm. Under North Dakota law, Shah is "legally entitled to collect" non-economic damages from State Farm on the basis of the underinsured motorist coverage. The insurance contract expressly provides that all coverages, including UIM coverage, will apply in Canada. Under North Dakota law, the Court concludes that Shah is legally entitled to pursue a claim for non-economic damages from State Farm under the UIM provisions of the policy.

This holding fosters the express purpose of underinsured motorist coverage which is to provide protection and coverage to insureds for injuries caused by underinsured motor vehicles. The purpose of the underinsured motorist law is best served by interpreting the "legally entitled to collect" requirement as providing UIM coverage when the wrongdoer's liability for damages is limited, as it is under Manitoba law, and not covered by the at-fault driver's insurance. The Court concludes that State Farm's underinsured motorist coverage is triggered and that Shah is legally entitled to pursue the recovery of non-economic damages under State Farm's UIM policy provisions.

The Plaintiff's Motion for Summary Judgment (Docket No. 12) is **GRANTED** and the Defendant's Motion for Summary Judgment (Docket No. 10) is **DENIED.**

Trial will proceed on August 22, 2005, on the issues of fault and damages.

**IT IS SO ORDERED.**